**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.H.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **Civil Action No. 25-10435**<br><br>**OPINION** |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff A.H. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning August 9, 2021. A hearing was held before ALJ Tonya Green (the "ALJ") on July 2, 2024, and the ALJ issued an unfavorable decision on July 24, 2024. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of July 24, 2024, the ALJ found, at step two, that Plaintiff had the following severe impairments: post-traumatic stress disorder, bipolar disorder, learning disorder, borderline personality disorder, generalized anxiety disorder, alcohol and cocaine abuse, schizoaffective disorder. At step three, the ALJ found that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of exertional tasks but had a series of non-exertional limitations. Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded for three reasons: 1) at step three, the ALJ's determination that Plaintiff's condition does not meet the requirements of the Listings of Impairments is not supported by substantial evidence; 2) at step four, the ALJ's RFC determination is not supported by substantial evidence; and 3) at step five, the ALJ's determination that Plaintiff could perform alternative work which exists in significant numbers in the national economy is not supported by substantial evidence. Because the Court agrees with Plaintiff that the ALJ did not adequately account for Plaintiff's most recent IQ testing results at step three, it will vacate and remand the Commissioner's decision.

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely

that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff show that, but for the error, he might have proven his disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

At step three, Plaintiff argues that the ALJ's determination that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments is not supported substantial evidence. Plaintiff points out that the ALJ did not explain how Plaintiff's most recent IQ testing results impacted consideration of her step three analysis, specifically as to Listing 12.05B. (Pl.'s Br. at 13-14). The Court agrees with Plaintiff that this is material and prejudicial error which warrants remand.

Listing 12.05 states:

> 12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:
>
> A. Satisfied by 1, 2, and 3 (see 12.00H):
>
> > 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
> >
> > 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
> >
> > 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> OR
>
> B. Satisfied by 1, 2, and 3 (see 12.00H):

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

At step three, the ALJ determined that Plaintiff did not meet the requirements of Listing 12.05B, nor any of the other Listings which she considered. In explaining why Listing 12.05B was not satisfied, the ALJ stated that "significant deficits in adaptive functioning" had not been shown, "as indicated" by her discussion earlier in the opinion of the four functional realms that comprise the "paragraph B" criteria. (Tr. at 20). Earlier, the ALJ found that Plaintiff had a "marked" impairment in the functional area "adapt or manage oneself" but only moderate impairment in the other three areas. (Id. at 18). In assessing Plaintiff's ability to understand,

remember, or apply information, the ALJ stated the following:

> In understanding, remembering or applying information, claimant has a moderate limitation. Claimant's mental status exam while in jail showed thought process, speech and memory within normal limits and fair insight and judgment (Exhibit B24F). A recent consultative evaluation noted moderate limitations in recent and remote memory on mental status examination (Exhibits B22F, B23F). Notes from South Jersey Behavioral Health including recent mental status exam on March 12, 2024 showed his memory was within normal limits (Exhibit B19F; B25F/12).

(Id.).

Notably absent from the ALJ's assessment of Plaintiff's ability to understand, remember, or apply information, is any discussion of Plaintiff's most recent IQ test. In testing with Dr. Lewis Lazarus in April 2024, Plaintiff scored a full-scale IQ of 61, with subtest scores that were similarly poor: 68 on Verbal Comprehension, 69 on Perceptual Reasoning, 63, on Working Memory, and 68 on Processing Speed. (Id. at 1217). Dr. Lazarus's review of these scored indicated that they "demonstrated a general level of intellectual functioning which was considered to be within the extremely low range. (Id.). That full-scale IQ score put him at the first percentile in general learning ability. (See Id. at 24). The ALJ's failure to consider Plaintiff's most recent IQ score at step three, especially given Listing 12.05's explicit reference to IQ scoring, constitutes reversible error. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000) (holding that an ALJ must, at step three, "*fully* develop the record" and "includ[e] an analysis of whether and why [the plaintiff's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments.") (emphasis added).

Moreover, this error was harmful. If the ALJ had adequately considered Plaintiff's very poor testing results, she may have concluded that Plaintiff had a marked impairment the ability to understand, remember, or apply information, which in turn would have resulted in a finding of

disability. § 12.05B(2) (stating that marked limitation in two functional areas is required for a finding of significant deficits in adaptive functioning); see Lloyd v. Comm'r of Soc. Sec., 2020 WL 2832567, at *4 (D.N.J. June 1, 2020) ("The first percentile is a level which other courts have found to be a marked impairment.").

Even if Plaintiff had only ever shown a full-scale IQ of 77, the Court is skeptical that the ALJ's assessment that Plaintiff's ability to understand, remember, or apply information was only moderately impaired could stand. Listing 12.00F2 defines the five-point scale used in Listing 12.05B(2), in relevant part, as follows:

> c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is *fair*.
>
> d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*.

In the Court's view, it is unlikely that a reasonable review of the evidence could find that an individual with a full-scale IQ of 77—which indicates "borderline" intellectual functioning (Tr. at 454)—has "fair" rather than "seriously limited" independent functioning in his ability to understand, remember, or apply information. So, even absent the more recent IQ testing, the Commissioner's decision would be unlikely to be supported by substantial evidence.

While the Court need not reach errors in step four since the Court finds error in step three sufficient to remand, the Court cannot overlook the fact that in the step four analysis, where the ALJ did discuss the results of the 2024 IQ testing, her conclusions were insufficiently explained and essentially conclusory. At step four, ALJ stated the following:

> Claimant was administered the Wechsler Adult Intelligence Scale (WAIS) which revealed a full-scale IQ of 61, and all other scores falling within the 60s. His intellectual functioning which was

> considered to be within the extremely low range (Exhibit B23F). While testing results were considered consistent with claimant's history, I note claimant's previous adult intelligence scores of: FSIQ of 77, Verbal of 74, and Performance of 85 (Exhibit 1F p. 18). The evidence as a whole shows a higher level of function and ability to learn than shown by the recent intelligence scores. Claimant testified to a 3rd grade reading level. His representative noted a 1st percentile general learning ability based on Intelligence sources. He also referenced claimant's previous intelligence exam scores. There is no evidence to support any worsening of intelligence overtime. Additionally, records from Kansas City Board of Education indicated that while claimant was instructional on a 1st grade level in reading and decoding, he was at the 5th grade level in spelling and math. The record further indicated he was repeating. There is no evidence to support any worsening of intelligence overtime.

(Tr. at 23-24). In the Court's view, the reasoning in this paragraph is inadequate. First, the ALJ appears to have discounted the importance of Plaintiff's recent full-scale IQ score of 61 because it stood in contrast with a previous test which found a full-scale IQ score of 77. But the ALJ did not mention that Plaintiff took the test on which he scored a 77 in 1996—a full thirty years ago. The ALJ then makes the conclusory statements that "[t]he evidence as a whole shows a higher level of function and ability to learn than shown by the recent intelligence scores[,]" and "[t]here is no evidence to support any worsening of intelligence overtime." (Id.). But the evidence which supports the worsening of intelligence over time is, of course, the dramatically low full-scale and subtest IQ scores from 2024. In short, in the Court's view, the ALJ did not meaningfully consider Plaintiff's recent IQ testing results. Accordingly, the ALJ's reasoning here is unsupported and inadequately explained.

For the reasons set forth above, this Court finds that the Commissioner's decision is not supported by substantial evidence and the decision of the Commissioner is vacated and remanded for further proceedings in accordance with this Opinion.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: August 4th, 2026